May it please the Court, my name is Jordan Facter and I represent the defendant, Helix TCS. Holding that plaintiff has a private right of action under FLISA would frustrate Congress's express intent under both FLISA and the CSA. The goal of statutory interpretation is to give effect to Congress's intent. Congress has expressed clearly its intent and its favored policy in adopting both FLISA and the CSA. Holding that an employee whose employment activity consists of trafficking Schedule I drugs does not have a private right of action under FLISA would frustrate Congress's express intent under both FLISA and the CSA. Holding that an employee whose employment activity consists of trafficking Schedule I drugs does not have a private right of action under both FLISA and the CSA. Congress's express intent is to restrict the flow of those goods in commerce. And so by adopting provisions like minimum wages and maximum hours, Congress could ensure, to the greatest extent possible, that lawful industries can freely trade goods throughout the United States. Congress declared in the CSA that it wanted to restrict entirely the flow of Schedule I drugs in commerce. Congress passed FLISA in order to maximize job availability in lawful industries throughout the United States. Congress passed the CSA in order to deter individuals from participating in enterprises that traffic Schedule I drugs. Congress passed FLISA to promote general health and well-being. Congress found in the CSA that the production and manufacture of Schedule I drugs is inherently deleterious to health and well-being. The result that plaintiff urges here would be directly contrary to Congress's express policy rationale in adopting both FLISA and the CSA. Congress passed FLISA in order to limit the flow of Schedule I drugs throughout the United States. Is a policy argument, in part, to the extent that the goal of statutory interpretation is to give effect to Congress's expressed policy? Yes. And so to understand what Congress's expressed policy was and then determine which interpretation would either effectuate or undermine it, it is a policy question. But it's also, perhaps, a more narrow or could be a more narrow question of statutory interpretation. Plaintiff is proceeding under 29 U.S.C. Section 216B, which confers a private right of action on employees to recover, quote, their unpaid compensation. In using the word their, Congress denoted some sort of property right in that compensation. That is further effectuated by the next subsection, 29 U.S.C. Section 216B. Which refers to an employee's, quote, right under subsection B to recover unpaid overtime compensation. So to the extent that plaintiff has a claim here, and this is generally true of plaintiff's claiming under federal statutes anyway, but it's certainly true within the language of FLISA, he has to establish a personal property right in this compensation. To the extent he has a personal property right, it's because Congress established it by enacting FLISA. Without FLISA, no employee could claim a property interest in a certain amount of compensation unless it was part of a contract, which isn't the case here. So is there any policy statement in the FLSA that it's trying to have employees recover unpaid overtime compensation? Are employees treated fairly? You mentioned the fact that the FLSA is to improve the flow of commerce. And you make the point that this is not the type of commerce that federal law would encourage. Is there anything there to say that the FLSA is to protect workers from exploitation, among those lines? No, but I think that's fairly implied, that Congress was trying to establish a level of wages that would be fair. But the reason they wanted to establish wages that would be fair really is because of more of a macroeconomic approach, which is they wanted to avoid a situation where workers were constantly underbidding each other, and jobs went to the most desperate workers who were willing to take the least amount of money. And that really was in an effort to promote widespread job availability by creating at least a baseline of compensation for everyone. Again, the desire to create widespread job availability is not applicable to enterprises that traffic in Schedule I drugs. And here, Plaintiff Kenney has to assert as a private plaintiff, not in an action brought by the Department of Labor, but as a private plaintiff, he has a property right to this money. And Congress has said clearly in the CSA that there is no property right in the proceeds of a federal drug crime. The problem here is your client is also engaging in unlawful activity. And we need some sort of standard to evaluate what we do in that circumstance. And it doesn't seem that unclean hands are imperative to help you. I agree. I mean, my client is also in violation of federal law. But, Your Honor, every participant in Colorado's recreational marijuana industry makes an implicit bargain. They understand that while they are required to comply with all federal law, while they are subject at any point to federal criminal sanction, they do not enjoy any benefits of federal law. That is true of businesses and individuals, of employers and employees, of producers and of retailers. Everyone knows that they're entering this legally ambiguous industry, wholly prescribed under federal law, and as a result they have no right to claim federal benefits. Federal law, which isn't currently being enforced. I think that's unclear, Your Honor. I know that under the Cole Memorandum, the Department of Justice said that their enforcement priorities are to prevent diversion, to prevent sales to children, and to prevent the organized criminal elements from being involved. And that would be the enforcement priority. But Attorney General Sessions rescinded the Cole Memorandum, and so it actually is unclear. And he rescinded himself. Apparently. Whether he rescinded himself or he was forcibly rescinded, I guess, is the question. That would be true. The company, your company, complies with other federal laws, like the income tax laws and the securities laws. Yes. Why not this law? It has to comply with all federal law. That's not including the Fair Labor Standards Act. Perhaps. And perhaps if the Department of Labor brought in action, that would be a claim that the Department of Labor would have. But that's a different question than whether this plaintiff has a private right of action to seek compensation that he claims is his by virtue of federal law. Which he earned by virtue of his work, presumably. And this gets into some of the disputed facts, which we can't get into on a motion to dismiss. But in any event, he cannot state a claim under any federal law to a right to these proceeds. Because federal law is clear that no one in his position who performs the very acts for which he seeks compensation may receive the proceeds of that work. Is there any case that supports your argument? This really is a new area, Your Honor. But the CSA is clear that there's no right to the proceeds of conduct that violates the CSA. And there are numerous federal criminal cases, of course, dealing with forfeiture for that reason. It's clear that at the time one commits a violation of the CSA, at that very instant, any proceeds are the property of the United States government and not of that individual. And so this case arises on a private claim, and he can claim that. But again, Your Honor, it's not like employees in Colorado have no recourse. They just have no recourse under federal law. The state of Colorado has developed a robust legal and regulatory framework to govern the recreational marijuana industry, including by adopting a law that is exactly the parallel of the law that plaintiff is proceeding under here. Because plaintiff chose to work in an industry that is lawful and regulated under state law, wholly proscribed under federal law, his recourse is under state law. Which we've already had some, this happened before, that Colorado has interpreted its law as applied to marijuana enterprises to be superseded by federal law, to be rescinded, certain things that were required by state law are not required because that would violate the CSA. So isn't, their argument is you're being a little sneaky. Sure. I was going to say sneaky. They probably accused me of both. But those statutes under, in People v. Krause and in the, Judge Ide, what was the other case that you wrote in your prior job? We're the last people to remember the case. Those cases all involve statutes, and it was a matter of statutory interpretation, which is that a federal, a state statute said that the activity would have to be lawful. And so the construction of the Colorado Supreme Court is that means lawful under state and federal law, because it's not lawful under federal law, it's not lawful for the purposes of the state statute. The Colorado Minimum Wage Act, as interpreted by the minimum wage order, which is this analogous state statute, has no sort of analogous language. I don't see how there could be a preemption argument made. I'd like to reserve the balance of my time. Good morning, Your Honor. May it please the Court. My name is Lindsay Aitken, and along with Co-Counsel Michael Josephson and Rex Burke, she's sitting in the galley there, we represent the appellee Robert Kenney in this case. Mr. Kenney worked as a security guard for Helix. Mr. Kenney filed his claims under the Federal Fair Labor Standards Act, which I'm going to refer to as the FLSA from here on out, alleging that he was misclassified as an exempt employee and not paid overtime for hours over 40. Helix obviously moved to dismiss Mr. Kenney's claim. The district court correctly found that there was subject matter jurisdiction in the form of federal question, because we alleged a claim under federal law. The district court also correctly found that Helix's argument that Mr. Kenney could not bring a claim under the FLSA because he was not a covered employee essentially under the Act, because his employment duties required him to violate federal law, was a legal sufficiency argument and correctly found that we pled a plausible claim for relief under 12b-6. Now, Helix's argument essentially boils down to this. Is its decision to violate one federal law, in this case the Controlled Substances Act, does it give it an excuse not to comply with another federal law, in this case the Fair Labor Standards Act? Helix cannot pick and choose what federal laws it wants to follow. Well, I think its argument is not quite that bad. The FLSA applies to people working in commerce. Correct, Your Honor. And at least the Patent and Trademark Office has consistently said that commerce means lawful commerce. So you can't get a trademark to sell an unlawful product. You are correct. So why does that reasoning not apply here? Yes, Your Honor. I can address that directly, actually. The Trademark Act itself has a requirement that the mark be bonafide, which the courts have interpreted because the term bonafide was ambiguous as meaning lawful use in commerce. And some of the other statutes that specifically forbid The other statutes. The tax code, for instance, the bankruptcy code. Those are explicit. They're all explicit. They have a specific legality. But some of the trademark decisions don't rely on bonafide, I don't think. I think the first ones in that area just said it's not lawful commerce. It's not lawful, so it's not commerce under the F. Absolutely. And the Controlled Substances Act and Congress have actually found that marijuana does travel in commerce. And the definition is whether Helix is an enterprise engaged in commerce. And because Congress has found marijuana constitutes commerce, therefore our position would be that this is commerce. Now, like I said previously, the FLSA, unlike a lot of these other federal enactments, does not have a lawfulness requirement or a prohibition for unlawful commerce in this case. Essentially, where Congress is silent as to this issue, the congressional silence speaks volumes. In this case, the CSA was enacted in 1970. The FLSA, obviously, in 1938. Both have been amended multiple times since the CSA's enactment in 1970, including after 1996 when California became the first state to decriminalize medical marijuana. So the opportunity has been there for Congress to step in and make an exemption for these individuals, and it hasn't done so. And it also has not gone in and made there be a lawfulness or any sort of legality argument as, for instance, they did in the tax code under 26 U.S.C. 280E. They specifically say that enterprises that are engaged in violating the Controlled Substances Act are not able to take a tax deduction. That's explicit. It's on subject with where we're at here today. Is there a greater percentage in security services for marijuana firms? I do not believe so, Your Honor. They actually admit in some of their earlier briefing that a percentage of their business is not guarding marijuana companies. But is the greater percentage guarding? It's a greater percentage that is guarding the marijuana industries, as far as I recall. So, like you stated earlier, Judge Seymour, Hewitt does comply with federal law in other regards. For instance, just yesterday they filed a 10-Q report. They pay federal income taxes. They pay Social Security taxes. They actually have trademarks, which they claim people that are violating the Controlled Substances Act shouldn't be able to get. The question that was certified before this court was, Is plaintiff an employee in Colorado's recreational marijuana industry entitled to FLSA protection even though his activities constitute federally criminal conduct? And the answer is yes. The Fair Labor Standards Act puts the burden on the employer to comply with it. It is the remedial statute where there is a presumption of coverage. Specifically, the FLSA requires that employers who are engaged in commerce must pay their employees for overtime compensation, excuse me, for hours worked over 40 in a single work week. There are exceptions that exist that Congress has specifically set forth through either its enactments or amendments multiple times even after the CSA was enacted in 1970. None of these exemptions apply to the employees at issue here, and there's not an exception for companies who are in violation of the Controlled Substances Act from complying with the Act. There's no question that the express terms of the FLSA cover the employees. Helix is an employer under the Act. Mr. Kenney is an employee under the Act. Helix is engaged in commerce under the Act, and none of the statutory exemptions apply. Now, because the express terms of the FLSA apply, Helix's sole argument is that as an industry choosing to violate the Controlled Substances Act, that the CSA, the Controlled Substances Act, somehow repealed the FLSA as it relates to these workers. The results that Helix is advocating for would have you treat illegitimate businesses more leniently than legitimate businesses. You would have illegal businesses obtaining a competitive advantage over law-abiding legitimate businesses by both letting them reap the profits of their violation of the Controlled Substances Act and also have their overtime obligation discharged. They don't have a competitive advantage if they're working in the same field. They don't have an advantage over other security services for marijuana companies, do they? Well, Your Honor, they also provide security services not just to the marijuana industry. So you have security services, for instance, providing security guards to a mall who would be looking for similar individuals to work as employees, and you're saying because you're violating the CSA, we don't have to pay you overtime. That gives them an advantage over law-abiding companies. In hiring security guards. In hiring security guards, which is what the position at issue is in this case. What they are arguing is essentially that the CSA repealed the FLSA as it relates to these individuals. Now, it's fairly obvious there is no express repeal here. The Controlled Substances Act is a federal regulatory authority for the federal government to prosecute drug crimes. It says, essentially, don't do or sell drugs, but if you do, here are your punishments for doing so. While the FLSA is a remedial statute that governs the employer-employee relationship, which says, essentially, you have to pay your employees overtime and minimum wage. They don't, there's no express language in either statute that repeals the other from each other. The FLSA, in the FLSA alone, out of this, in this context, governs the payment of overtime wages, which is what the claim Mr. Kinney has brought forth. So, all that's left, because there is no, the express terms of the FLSA apply, and there is no express repeal, all that's left for Helix to hang its hat on is this notion of implied repeal. And I know at no time in the briefing or at argument today have the words implied repealed been issued by Helix, and I think that that's for a reason, because implied repeal, as the Supreme Court recently analyzed in the Epic Systems case, Justice Gorsuch specifically said, it faces a stout uphill climb. When a court is faced with two congressional enactments, it is not at liberty to pick and choose between them, and instead must seek to harmonize the statute, not find conflict in them. Implied repeal is a disfavored remedy that Helix bears the heavy burden of showing that Congress expressed a clear and manifest intent evidencing that the Controlled Substances Act and the FLSA cannot be harmonized and that the Controlled Substances Act displaces the FLSA. The heavy burden here is warranted. There is a presumption that Congress will specifically address pre-existing law when it wants to change its normal everyday operations with regards to that law. There's also the issue of separation of powers here. It is Congress's job by legislation to write and repeal the law, and not the Court's job by supposition. The congressional silence, as I talked about a few moments ago here, speaks volumes. Congress has had the opportunity since the enactment of the CSA to clarify whether or not workers operating within this industry are entitled to back wages, and it hasn't done so in either statute. One of the punishments set forth in the Controlled Substances Act is not withholding wages or overtime wages from these individuals. I would posit to the Court that Helix cannot meet this heavy burden of implied repeal. They have not pointed to a single specific provision of the Controlled Substances Act displacing the FLSA. As Your Honor noted momentarily ago, all of their arguments are policy-based, and the policy decisions are best left to Congress.  That's not totally true. I mean, we do apply unclean hands and, I forgot the other Latin, imperio delecto. Imperio delecto, yeah. To statutes, do we not? Yes, you are able to. And as you so astutely stated before, it would be hard to get there in this case because Helix is also violating the statute. And as far as the imperio delecto goes, it would have to be, it relates to the actual underlying claim itself, which here is the violation of overtime. And here there would be no, the employees here had nothing to do with the decision on whether or not they received overtime or not. So it wouldn't apply in that case, the LaMonica case. I believe the Ninth Circuit addressed the unclean hands argument in the realm of the illegal immigration cases. For the FLSA. If we have to get into analyzing specifically whether or not there is a conflict between the two statutes, I would say that the answer is there absolutely is not. The Controlled Substances Act recognition of a federal regulatory authority and jurisdiction to the federal government to prosecute drug crimes does not in and of itself preclude overtime to these individuals. Paying overtime to these individuals does not render any specific portion of the CSA invalid or superfluous. Nothing prohibits the federal government from prosecuting drug crimes if you pay overtime to these individuals. They have absolute prosecutorial discretion as to whether or not they would like to bring drug crimes. And there's been no indication here. There have been no charges brought here, no seizure of assets brought here. It's absolutely within the realm of the federal government's discretion on whether they want to prosecute. And currently we're not sitting here facing, there are no CSA violations on the table. Nor does paying these individuals overtime condone violations or continue violations of the Controlled Substances Act. By paying these individuals overtime, you're merely ensuring that companies like Helix do not take advantage of their own violation of the Controlled Substances Act by availing itself of the benefit of its employees' past labor without paying them in accordance with the Fair Labor Standards Act. The law is clear here. Congress has instructed that the FLSA applies to Helix as an employer and to Kenny and covers Kenny as an employee as written. Congress is free to amend, but it has not done so with the enactment of the Controlled Substances Act, much less manifested a clear intent to displace the FLSA by enacting the Controlled Substances Act. In closing, I would say that the marijuana industry, employers like Helix operating within the marijuana industry, there's no exemption that applies. If they seem to believe that they are exempt, they are free to go talk to their congressmen instead of asking the court to legislate from the bench. And if there's no further questions, I will cede the remainder of my time. Thank you, Your Honor. Let me ask you a factual question. Is it conceded that you have employees not working with the marijuana industry? Not security employees. So there's a minor portion of Helix's business that involves the sale of software that performs certain compliance functions for businesses, but the vast major portion of Helix's business is supplying security services exclusively to the marijuana industry. They provide individuals like plaintiff who, with use of a firearm, guard the production of a Schedule I substance and then transport it with the intent to distribute it. That is far and away the major portion of my client's business. How do you treat employees in the software portion of the business? Distinctly. So they get... They're classified differently, yes. And so it's a totally different program. Quickly, as a factual matter, all of this arises out of a program that my client developed that provides a certain amount of stock in lieu of overtime. Employees like Mr. Kenny sign up for that program and agree to accept stock in lieu of overtime. That's why we're here. Legally, I think the trademark cases are on point. Courts had to interpret the term bona fide in light of Congress's intent. What did Congress intend in adopting the Trademark Act? Did they intend to provide federal protection to marks and products that Congress has declared to be illegal? And you have to look at the CSA to determine if, in a given case, Congress determined that this product and the mark associated with it is bona fide. It's not because Congress declared that it wanted to eliminate commerce and provide no protection to the production of these Schedule I drugs and so the Trademark Act does not cover it. Similarly with FLISA. Yes, it doesn't say lawful in FLISA, but can you conclude that Congress clearly passed FLISA to encourage commerce? Did Congress pass FLISA to encourage the trafficking of illegal substances? Plainly not. And this ties into the illegal immigration. Were they thinking about the trafficking of controlled substances when they passed the Fair Labor Standards Act to protect employees? No. I don't think so at all. But I do think that they were thinking about encouraging lawful commerce. I can't imagine that in passing FLISA when they did, they were anticipating that it would cover illegal gun running or that it would encourage. Couldn't Congress amend it to make this clear? Congress might need to amend it in the future now that we have this burgeoning new industry that is now lawfully ambiguous, which is why this question is rising right now and why it's arising in Colorado, which was the first state to have a recreational marijuana industry. They haven't yet, but in this case. How many states now have a recreational marijuana industry? I think fewer than 10, but I think it's closer to 10, and that's as close as I can give you, Your Honor. And so, no, so Congress did not use the word lawful. But a lot of them have medical marijuana. Yes, Your Honor. Which is also illegal under federal law. It is. And don't majority of states have medical, even Oklahoma has medical marijuana. Yes, Your Honor. Even Oklahoma does, so clearly the majority does. Yes, and Congress has not amended the FLSA to make clear that they were not seeking to ensure the free flow of Schedule I substances in commerce. That's clear. But in interpreting the statutes now, this Court has access to what Congress's intent was in adopting both FLSA and the CSA and holding that individuals have a federal right to the proceeds of trafficking in Schedule I drugs and can enforce that right in federal court is inconsistent with Congress's intent. This would avoid the pure question you presented on this appeal, but I'm trying to see where commerce comes in to the provisions of the FLSA. And one of the definitions is enterprise engaged in commerce or in the production of goods for commerce. And your client would appear to fit within that description, even if marijuana is considered not commerce. So the fact that you have some lawful and some unlawful portions of the enterprise, at least under federal law, suggests that you come under the definition of the FLSA Let me answer that question in two ways, if I may. First, if this were a case by the Department of Labor, that might be dispositive. But because this is a private right of action, you also look at Section 216B and Section 216C, which requires the plaintiff to establish that this is their compensation, which means they have a right to it under federal law. And they don't because federal law is clear that there is no property right in the proceeds of federal drug crimes. But secondly, in regulating commerce, Congress can do two things. One is that it can encourage commerce, but it also exercises its Commerce Clause powers by restricting commerce. It sought to encourage commerce in passing the FLSA to the greatest extent possible. But in adopting the CSA, it specifically sought to restrict the flow of certain goods in commerce and to prevent their production and manufacture. And so Congress stated in the CSA that it wanted to eliminate certain forms of commerce that is inconsistent with the FLSA's goal of encouraging, to the greatest extent possible, certain forms of commerce. So to harmonize those statutes, as this Court must, it should hold that there is no private right of action for an employee whose employment activity consists exclusively of violating the CSA. Thank you. Thank you. Thank you very much, counsel. Case is submitted. Counsel is excused.